THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RONALD MITCHELL, Defendant-Appellee.

Second District    No. 2—03—1339

Opinion filed March 31, 2005.

HUTCHINSON, J., specially concurring.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

In 1989, the defendant, Ronald Mitchell, was charged by complaint with one count of attempted murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1(a)(1)) and two counts of armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2). In 2003, he was arrested and indicted on these charges. The defendant moved to dismiss the charges, asserting that the State had violated his constitutional right to a speedy trial (U.S. Const., amend VI; Ill. Const. 1970, art. I, § 8). The trial court granted the motion. The State appeals (see 188 Ill. 2d R. 604(a)(1)), arguing that (1) the defendant's right to a speedy trial did not accrue until 2003; and (2) even if the right accrued in 1989, the defendant did not establish a violation, as he fled Illinois in 1989 and did not return until 2003. We agree with the State's first argument. Therefore, without reaching the State's second argument, we reverse and remand.

On March 6, 1989, Ronald McKissick, a detective with the North Chicago police department, filed a complaint for a felony arrest warrant. The complaint alleged that, on or about March 3, 1989, the defendant committed attempted first-degree murder and armed violence by slashing his wife, Jennifer Mitchell, with a knife. The complaint was signed by McKissick alone. On March 7, 1989, the trial court issued the warrant. On November 1, 1989, the case was assigned to Judge Henry Tonigan III. No more proceedings of record occurred

until March 1, 2003, when the State refiled the complaint and the defendant filed an appearance and a statutory speedy-trial demand (see 725 ILCS 5/103—5 (West 2002)). On March 19, 2003, the defendant was indicted on the three felony charges.

The defendant moved to dismiss the case, arguing that the delay of more than 14 years (and counting) since he was charged violated his constitutional right to a speedy trial. The defendant conceded that, shortly after March 3, 1989, he fled to Ohio and did not return to Illinois until 2003. However, he contended that the police could easily have discovered the defendant's address long before 2003. The defendant's motion attached several exhibits. According to a police report dated March 6, 1989, Jennifer Mitchell stated that the defendant "ha[d] a ticket to Cleveland" and that his sister "stay[ed] at 139 River Edge [*sic*] Parkway" in Berea, Ohio. Defendant's sister, Saundra McClinton, stated by affidavit that the defendant lived with her at 139 Riveredge Parkway in Berea from March 1989 through summer 1990. A certificate filed in the Lake County circuit court on April 4, 1989, memorialized the dissolution of the defendant's marriage and gave his address as "139 River Edge [*sic*] Parkway" in Berea, Ohio. Finally, a report compiled June 12, 2003, via a computer search, listed the defendant's possible addresses from March 1989 through July 2001 and a possible employer.

The trial court held a hearing on the defendant's motion. Detective McKissick testified that, on March 6, 1989, Jennifer Mitchell told him that the defendant was living at 139 Riveredge Parkway in Berea, Ohio. After obtaining the arrest warrant, McKissick called the defendant's workplace in Gurnee and learned that he was not there. McKissick never tried to contact anyone at the Berea, Ohio, address and did nothing else to locate the defendant. (McKissick retired in 1992.) Saundra McClinton testified that, starting in March 1989, the defendant lived at her home for 14 or 15 months. In that time, nobody from any police department asked her about him. Walter Holderbaum of the North Chicago police department testified that, in February 2003, he first became aware of the case when he learned that the defendant was in custody in Cleveland. Holderbaum and another officer picked up the defendant and returned him to Illinois. The defendant told the officers that, "within the first two weeks after this incident," he and his mother went to the Cleveland police station. They were told that the North Chicago police department "was not looking for him" and that "he had no active warrants."

The trial court granted the defendant's motion to dismiss. The court explained that, under *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), the 14-year delay since the defendant

was charged by complaint was prejudicial and unjustified, as the State could easily have found the defendant far sooner than it did. The State timely appealed.

The State argues first that the trial court erred in assuming that the defendant's right to a speedy trial accrued when Detective McKissick filed the complaint for an arrest warrant in 1989. The State urges us to hold that the speedy-trial clock did not begin to run until 2003, when the defendant was arrested and indicted. Although the State did not raise this argument at the trial level, the waiver rule is not a limitation on this court's jurisdiction (*American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991)), and, in the interests of justice and a sound body of precedent, we elect to reach the merits of the State's argument.

We agree with the State that the defendant's constitutional right to a speedy trial did not accrue until 2003. Therefore, the trial court erred in dismissing the charges.

Both the United States and Illinois Constitutions guarantee "the accused" the right to a speedy trial. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. In deciding when someone becomes an "accused," we rely on case law construing the federal speedy-trial right, as no Illinois cases suggest that the state constitutional right is any broader. The Supreme Court has held that "it is either *a formal indictment or information* or else the actual restraints imposed by arrest and holding to answer a criminal charge" that make a person an "accused" so as to activate the right to a speedy trial. (Emphasis added.) *United States v. Marion*, 404 U.S. 307, 320, 30 L. Ed. 2d 468, 479, 92 S. Ct. 455, 463 (1971). The clear implication of this language is that either an arrest or a *formal* accusation—and not merely *any* charging instrument—is needed to start the speedy-trial clock.

Several opinions of lower federal and state courts have recognized and applied this limitation. These courts have held that, under statutory charging schemes similar to ours, a felony complaint for an arrest warrant does not by itself trigger the sixth amendment right to a speedy trial.

In *Pharm v. Hatcher*, 984 F.2d 783 (7th Cir. 1993), the defendant claimed that the State of Wisconsin had denied him a speedy trial because 13 years elapsed between when it charged him by felony complaint and when it filed an information against him. The federal court disagreed, holding that the defendant's right to a speedy trial did not accrue until he was charged by information. Noting that the Supreme Court had adopted a "narrow definition of official accusation, usually including only indictment and information," the court observed that Wisconsin law specifies that " 'the trial of a felony ac-

tion shall be upon an information' " in which the State details the charges and to which the defendant must plead guilty or not guilty. *Pharm*, 984 F.2d at 785, quoting Wis. Stat. § 971.05 (___); see also Wis. Stat. §§ 971.01, 971.02 (___). Thus, the indictment or information is the "official charging document in a felony case" (*Pharm*, 984 F.2d at 795), and a criminal complaint is not a formal accusation under *Marion*. *Pharm* relied in part on *Favors v. Eyman*, 466 F.2d 1325 (9th Cir. 1972), which reached a similar result under Arizona law.

In *People v. Martinez*, 22 Cal. 4th 750, 996 P.2d 32, 94 Cal. Rptr. 2d 381 (2000), the California Supreme Court also held that the filing of a felony complaint does not trigger a defendant's sixth amendment right to a speedy trial. The court reasoned that, under California law, a complaint enables a magistrate to allow an arrest in a felony case, but an information or an indictment is necessary to give the trial court jurisdiction over the prosecution of the alleged felony. *Martinez*, 22 Cal. 4th at 763-64, 996 P.2d at 41-42, 94 Cal. Rptr. at 391-92.

In *Davis v. State*, 630 S.W.2d 532 (Tex. Crim. App. 1982), the court held that a felony complaint is not a formal accusation that starts the speedy-trial clock. The court followed the reasoning of the Missouri Supreme Court (applying its own state's law) that, while a complaint serves as the basis for an arrest warrant and creates the possibility that a criminal charge will be filed, " '[f]elonies are prosecuted by indictment or information.' " *Davis*, 630 S.W.2d at 537, quoting *State v. Caffey*, 438 S.W.2d 167, 171 (Mo. 1969). The court explained further that, by referring specifically to a formal indictment or information, the Supreme Court in *Marion* implied that "a less formal accusation or charge, such as the filing of a complaint or the issuance of an arrest warrant," would not trigger the sixth amendment right to a speedy trial. *Davis*, 630 S.W.2d at 537.

We see no reason that the application of Illinois law should lead to any rule different from that adopted in the foregoing cases. In Illinois, "[a]ll prosecutions of felonies shall be by information or by indictment." 725 ILCS 5/111—2(a) (West 2002). While a felony complaint enables the police to obtain a warrant to arrest a defendant, he may not be subjected to a trial until the State has obtained an information or an indictment against him. Thus, if the State has done no more than secure a felony arrest warrant against the accused, without having either arrested him or obtained an indictment or information, the sixth amendment right to a speedy trial has not been triggered. Although any prejudicial delay that the defendant has suffered may be cognizable as a violation of due process or the pertinent statute of limitations (see *Marion*, 404 U.S. at 321-22, 30 L. Ed. 2d at 479, 92 S. Ct. at 463-64; *People v. Lawson*, 67 Ill. 2d 449, 458 (1977)), it cannot give rise to a speedy-trial claim.

The logic of the rule that a mere felony complaint is not a formal accusation is particularly evident in the case at bar. Here, until the defendant was indicted, the State's Attorney was all but uninvolved in his case. The sole "accusation" against the defendant was a complaint filed by a police officer. Neither the common-law record nor the evidence from the hearing on the defendant's motion shows that the State's Attorney's office had the least involvement in filing the complaint or procuring the arrest warrant. Under such circumstances, it is not realistic to assert that, at any time before he was arrested or indicted in 2003, the defendant had been "accused" within the meaning of the sixth amendment.

We hold that the defendant's constitutional right to a speedy trial did not accrue until he was arrested, which apparently occurred in February 2003. The defendant has not asserted that the delay between his arrest and his (eventual) trial violates his right to a speedy trial, and we need not decide that question here. The trial court erred in finding a speedy-trial violation under the facts before us.

In so ruling, we reject the defendant's contention that this case should be controlled by *People v. Belcher*, 186 Ill. App. 3d 202 (1989). In *Belcher*, the defendant was charged on December 27, 1985, by criminal complaint with having committed at least one felony. (Although the *Belcher* decision does not specify any of the crimes with which the defendant was charged, we take judicial notice of this court's records, which indicate that at least one of the crimes that the defendant was charged with was likely a felony. See *People v. Chisum*, 30 Ill. App. 3d 546, 548 (1975).) A warrant for the defendant's arrest was also issued on December 27, 1985. The defendant was not arrested until April 5, 1988, however. On May 18, 1988, the defendant filed a motion to dismiss all charges, alleging that between June 3, 1986, and March 3, 1988, he was in custody serving a four-year sentence in the Illinois Department of Corrections. The defendant argued that the delay in arresting him was unnecessary, unjustified, and not his fault. The defendant therefore argued that he was denied his right to a speedy trial. *Belcher*, 186 Ill. App. 3d at 203. Following a hearing, the trial court dismissed the charges against the defendant. *Belcher*, 186 Ill. App. 3d at 204. On appeal, this court affirmed as we determined that the State had violated the defendant's right to a speedy trial. *Belcher*, 186 Ill. App. 3d at 208.

We believe that the *Belcher* court reached the appropriate and equitable result in affirming the dismissal of the charges against the defendant. There is no apparent reason why the State did not search the records of the Department of Corrections to see if the defendant was already incarcerated. If the defendant had been located, he could

have been tried, and if convicted, sentenced to a term of imprisonment concurrent to the one that he was already serving. See *Belcher*, 186 Ill. App. 3d at 204. Instead, because the defendant was not arrested until he had already served his sentence and secured employment, the defendant would necessarily not be able to serve a subsequent sentence concurrently to the one that he had just completed. Based on these facts, we agree with the *Belcher* court that it would have been improper to allow the State to proceed on additional charges against the defendant.

However, rather than determining the issue raised in *Belcher* on due process or equitable grounds, the *Belcher* court addressed the State's failure to proceed on its charges against the defendant in a timely fashion on the basis of whether the defendant's constitutional right to a speedy trial had been violated. *Belcher*, 186 Ill. App. 3d at 205. As discussed above, a defendant's right to a speedy trial is not implicated by the State's mere filing of a felony complaint against him. See *Marion*, 404 U.S. at 320, 30 L. Ed. 2d at 479, 92 S. Ct. at 463. Thus, to the extent that *Belcher* suggests to the contrary, we decline to follow the reasoning in *Belcher*.

Based on the facts of the case herein, unlike those presented in *Belcher*, we find no equitable reason requiring the charges against the defendant to be dismissed. Unlike the defendant in *Belcher*, the defendant herein was not in jail between the time when the complaint was filed against him and when he was arrested. Rather, the defendant had been living freely in Ohio after fleeing Illinois following the alleged attempted murder of his wife. As such, there is no reason why the State should not be allowed to proceed on its charges against the defendant.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed and the cause is remanded for additional proceedings.

Reversed and remanded.

BYRNE, J., concurs.

JUSTICE HUTCHINSON, specially concurring:

I agree with the majority's holding that defendant's constitutional right to a speedy trial did not accrue until February 2003. However, because the issue of accrual for purposes of establishing the commencement of a defendant's constitutional speedy-trial right was not before the *Belcher* court, I am not willing to create an implied rule of law from the *Belcher* court's application of the *Barker* factors. I do not

believe that the *Belcher* court suggested the broad proposition that filing a complaint against a defendant triggers a defendant's constitutional speedy-trial right. See 356 Ill. App. 3d at 164. I further believe the majority's rationale and disposition of the accrual issue was sufficient in and of itself to warrant a rejection of defendant's argument that *Belcher* should control our outcome.